IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2019

**STATE OF TENNESSEE v. AUSTIN ANDREW MORSE**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1509      Steve R. Dozier, Judge**

_____

**No. M2018-00430-CCA-R3-CD**

_____

Defendant, Austin Andrew Morse, was indicted by the Davidson County Grand Jury for six counts of aggravated child abuse, four counts of aggravated child neglect, and four counts of aggravated child endangerment.  Pursuant to a plea agreement, Defendant pleaded guilty to two counts of aggravated child neglect.  The remaining counts were dismissed.  It was agreed that Defendant's sentences would be served concurrently with a 70 percent release eligibility date.  The trial court would determine the length of the sentences.  Following a sentencing hearing, the trial court imposed sentences of 19 and 21 years for Defendant's convictions.  In this appeal as of right, Defendant contends that the trial court abused its discretion in imposing the length of his sentences.  Having reviewed the entire record and the briefs of both parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Bernard F. McEvoy, Nashville, Tennessee, for the appellant, Austin Andrew Morse.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Sentencing hearing*

In July 2014, Amber Leedy rented a room from Defendant and lived there with her two-year-old son, J.D.  Defendant lived there with his girlfriend Ashley Pesterfield and her four children, two of whom were fathered by Defendant.  Ms. Leedy testified that

Defendant cared for the children while she and Ms. Pesterfield worked as prostitutes. Ms. Leedy gave Defendant all of the money she made as a prostitute, and Defendant gave her heroin. She testified that Defendant, in the children's presence, abused substances, including "[h]eroin[ ], crack, pills, weed . . . pretty much everything you can name." Ms. Leedy testified that at some point, she began noticing bruises on her son. She asked Defendant about the bruises, and he told her that J.D. and another child were "playing rough." Ms. Leedy also noticed that some of her son's hair was missing and that he seemed to have pain in his arms and legs. Ms. Leedy testified that she wanted to take the child to the doctor, but Defendant "told [her] that he wanted [the] bruises to go away before so that he wouldn't get in trouble for it."

Carmella Duke, Ms. Leedy's mother, testified that on August 5, 2014, she received a phone call from Ms. Leedy. Ms. Duke heard a female voice in the background telling Ms. Leedy that she needed to take her son to the hospital or he would die. Ms. Duke then heard a male voice say that Ms. Leedy would not take the child anywhere. Ms. Duke drove to Ms. Leedy's residence and knocked on the door for 30 minutes before she was allowed to enter. When she entered, she asked Defendant where her grandson was, and Defendant told her that he did not know. Ms. Duke began opening doors and found her grandson in a bedroom. She testified that he held his arm over his face in a protective manner and whispered, "I be good, I be good." He was wearing only a diaper, and his mouth was bleeding. Ms. Duke told Defendant that she was taking the child and that Defendant was "going to jail." Ms. Duke pushed past Defendant and exited the house. She was met by emergency responders, who had been contacted by Ms. Leedy. J.D. and two other children who were present in the home were transported to the hospital. J.D. had severe bruising and swelling around his eyes. He also had two fractured arms, a pelvic fracture, and a large patch of hair missing from the top of his head.

Ashley Pesterfield testified for Defendant. She testified that in December 2008, she and her two daughters moved in with Defendant. She testified that Defendant "basically took it upon himself to help [her] and be a father to [her] kids. . . ." Ms. Pesterfield testified that Defendant "worked hard" and they "lived very nice." She testified, "[m]e and my girls had everything we needed." Defendant and Ms. Pesterfield had a daughter born in 2011 with Down Syndrome. Ms. Pesterfield testified that Defendant "was the perfect father by her" and that he was very involved in her caretaking.

Ms. Pesterfield testified that she began taking prescription pain medication following a serious car accident in 2011. She testified that she had "problems [ ] with addiction" since childhood, but that she had remained sober since her release from incarceration for a prior conviction in Texas. She testified that when she was prescribed

pain medication following the accident that "it was like starting my – my addiction all over again." Defendant also developed an addiction to pain medication.

In the summer of 2014, Ms. Pesterfield met Ms. Leedy and offered to rent her a bedroom because Ms. Pesterfield "was trying to help [Ms. Leedy] out basically." Ms. Pesterfield knew that Ms. Leedy was a heroin addict. Ms. Pesterfield acknowledged that she also used heroin. She testified that she rode with Ms. Leedy and sold heroin while Ms. Leedy engaged in prostitution.

Ms. Pesterfield testified that Ms. Leedy was messy and "unsanitary." She testified that Ms. Leedy "was real nonchalant" about J.D., and that "[s]he would make comments like, he was a methadone baby, that's why he cried so much." Ms. Pesterfield testified that Ms. Leedy "definitely neglected" her son. Ms. Pesterfield testified that she noticed bruises on J.D.'s back and forehead and that he looked "like he ha[d] the flu." Ms. Pesterfield told Ms. Leedy that she needed to take him to a doctor, and Ms. Leedy responded that she did not want to take him to a doctor because she was afraid he would be removed from her custody. Ms. Pesterfield testified that J.D. was with Ms. Leedy most of the time, but that Defendant cared for him "three or four nights" a week. Ms. Pesterfield testified that she never saw Defendant harm a child. She described Defendant as "humble and caring."

On August 5, 2014, Ms. Pesterfield accompanied Ms. Leedy when she went to prostitute herself. Afterward, they bought heroin and went to Walmart to buy diapers. Defendant was alone with the children while they were gone. Ms. Pesterfield testified that J.D. did not have any injuries to his mouth before they left.

Ms. Pesterfield acknowledged that she and Defendant were substance abusers and that they "sold drugs daily." She acknowledged that they used drugs in the presence of the children who lived in the home. Police found drug paraphernalia and prescription painkillers that were not prescribed to anyone living in the residence. Ms. Pesterfield acknowledged that her young daughters, who were fathered by Defendant, had tested positive for cocaine and morphine and that the children had previously been removed from their custody.

Following the sentencing hearing, the trial court entered a written order in which the trial court found that five enhancement factors applied to Defendant's sentence: 1) Defendant had a history of criminal convictions or criminal behavior; 2) the victim was particularly vulnerable because of age or disability; 3) Defendant treated a victim, or allowed a victim to be treated, with exceptional cruelty; 4) Defendant previously failed to comply with the conditions of release; and 5) Defendant abused a position of private trust in a manner that facilitated the commission of the offense. *See* T.C.A. § 40-35-114(1),

(4), (5), (8), and (14). The trial court found no mitigating factors applicable to Defendant's sentence. The trial court sentenced Defendant to serve 19 and 21 years' incarceration for his two convictions, and the trial court ordered Defendant's sentences to be served concurrently.

*Analysis*

Defendant contends that the trial court departed from the purposes and principles of the Sentencing Act in imposing his sentences. Specifically, Defendant asserts that the trial court misapplied various enhancement factors and failed to apply mitigating factors in reaching its decision. The State responds that the evidence supports the trial court's application of enhancement factors and decision not to apply any mitigating factors.

Our standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, and we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), *Sentencing Comm'n Cmts*. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

- 4 -

We conclude that the trial court properly sentenced Defendant. Defendant was convicted of two counts of aggravated child neglect of a child under the age of eight, a Class A felony. As a Range I offender, Defendant's sentencing range was 15 to 25 years by operation of law. T.C.A. §§ 39-15-402(b), 40-35-112(a)(1). The trial court considered the relevant principles and sentenced Defendant to within range sentences of 19 and 21 years for his convictions.

The record reflects that the trial court considered five enhancement factors in determining Defendant's sentences. The trial court found no mitigating factors. Defendant challenges the trial court's consideration of four enhancement factors. Defendant does not challenge the trial court's consideration of enhancement factor (4), that the victims were particularly vulnerable. *See* T.C.A. §40-35-114(4). The record supports consideration of the four enhancement factors that Defendant challenges.

Relevant to enhancement factor (1), the pre-sentence report admitted as an exhibit at the sentencing hearing reflects that Defendant had four prior criminal convictions. Additionally, Ms. Pesterfield and Ms. Leedy testified that Defendant used and sold drugs. This evidence is sufficient to support the trial court's consideration of this enhancement factor. We note that "the application of a single enhancement factor is sufficient to justify the imposition of the maximum sentence in the range." *State v. James Moore*, No. W2015-01483-CCA-R3-CD, 2016 WL 7654955, at *5 (Tenn. Crim. App. Aug. 23, 2016), *no perm. app. filed*.

Defendant also contends that the trial court failed to consider his allocution, in which Defendant expressed his remorse, and that the trial court failed to consider Defendant's potential for rehabilitation in mitigation. However, the trial court's written order specifically states that it considered the "extensive proof" presented by both parties at the sentencing hearing, including Defendant's allocution.

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to a within-range sentence for each conviction. As such, Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE